IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MANGINO II,<br>   Petitioner, | )<br>)<br>) |
| v. | ) 2:11-cv-222<br>) |
| KENNETH R. CAMERON, et al.,<br>   Respondents. | )<br>)<br>) |

MEMORANDUM and ORDEER

William Mangino II an inmate at the State Correctional Institution at Cresson has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Mangino is presently serving an eight and a half to twenty year sentence imposed following his conviction, by a jury, of five counts of violating the controlled substance act, three counts of Medicaid fraud, and one count of criminal conspiracy at No. 1181 of 2004 in the Court of Common Pleas of Lawrence County, Pennsylvania. This sentence was imposed on July 5, 2007.[1]

A pro se appeal was taken to the Superior Court in which the issues presented were:
1. The evidence at trial was insufficient.
2. The Commonwealth did not meet its statutory burden of proof.
3. The weight of evidence at trial was not sufficient.
4. Agents of Attorney General purposely separated appellant from advice and counsel in violation of U.S.C.A. 5.
5. All appellant interview statements were product of custodial interrogation and court erred in not suppressing statements or abused its discretion under U.S.C.A. 5.
6. State Board of Medicine actions and instructions to appellant to speak with and be interviewed by agents with whom they mingled in a previously initiated investigation deprived, compelled-to-obey, appellant of expectation against self-incrimination under U.S.C.A. 5 and 14.
7. The statute is constitutionally vague as it was applied to the overall practice and prescribing pattern of appellant in that it failed to warn appellant based

---
[1] See: Petition at ¶¶ 1-6.

1

upon "his" level of experience and the absence of any evidence presented that appellant prescribed without visually or physically examining patients or outside the traditional "bounds" or his ordinary customary pain practices dictated by standards of his specialty.
8. A "probabilistic" likelihood exists that appellant, in consideration of information that was not admitted at trial, and which is reliable, is "actually innocent" under the "Gateway standard of Carrier."
9. Commonwealth violated the rule of Brady by not disclosing that their witness John Lee had a crime in falsehood conviction for theft where his testimony, on balance, lent strong inferences to the jury that appellant knowingly prescribed to drug addicts despite Lee's claim that he was in pain.
10. Commonwealth violated the rule of Brady when an agent testified as to what appellant said and did where unproduced "rough draft" notes prepared during relevant interviews were not presented to the court for the purpose of cross-examination, where appellant colorfully claims those notes contained exculpatory information.
11. Omissions and errors on the part of his attorney constitutes unreasonable representation at every phase of trial and preparation and that this has procedurally defaulted appellant's pursuance of his claim of innocence.
12. Commonwealth medical expert testified outside the specific requisite level of experience expected under the general recognition and acceptance standard and that the court erred or abused its discretion by admitting Dr. Evanko as an expert in pain management.
13. Congress did not intend to aggregate the weight of a narcotic preparation with aspirin or Tylenol as pharmaceuticals in considering sentence guidelines, while practitioner has no control over the preparation and where certain patients cannot tolerate the pure opioid preparation.
14. Allowing all testimony that went to appellant's "wisdom" to prescribe where the statute is only concerned with a practitioner's diagnostic methods employed at the time of the patient's visit.
15. Not including the "good faith" instruction as a defense even though not charged.
16. Not instructing the jury that Commonwealth had the burden to prove that appellant did not "visually" or "physically" examine patients as constituting elements of the crime.
17. Not instructing jurors that "State Board opioid prescribing guidelines" have no force in law, after the court reminded itself to do so in response to appellant attorney Baluss objecting to Commonwealth medical expert's erroneous and prejudicial characterization that these guideline standards had force in the law.
18. By not applying the meaning of the statute to the facts of the case where the statute addresses appellant's state of mind specifically to the time of the doctor-patient relationship.
19. By not "authenticating" appellant's files on patients he had examined.
20. Allowing an agent to testify as to certain behavior patterns of some patients while exiting a medical office, where no proof was offered that appellant was

in the office at that time, had seen the patients that day, or had ever treated those patients.[2]

On June 11, 2009, the judgment of sentence was affirmed.[3]

Mangino then filed a pro se petition for allowance of appeal to the Supreme Court of Pennsylvania in which he failed to enumerate his claims and instead presented them in narrative form. As best we can determine, it appears that the issues he sought to raise were:

1. A denial of a fair trial under the Due Process Clause of the Fifth, Sixth, Ninth and Fourteenth Amendment to the United States Constitution.
2. The testimony of the Commonwealth's expert, Dr. Evanko that his "nonconsensus-of-the-pain-treating-community" claim is that old MRI findings were not dispositive of a reason for long-term pain, but rather that current treatment modalities are based on an individual case and a determination of whether the presenting conditions could reasonably produce pain and not objective evidence of that pain source and that Dr. Evanko was not qualified as an expert in pain management.
3. Insufficiency of the evidence to support a conviction in that the evidence appeared to rely on objective rather than subject evidence of pain.
4. Counsel was ineffective for failing to offer exculpatory evidence supportive of the petitioner's medical practices.
5. The evidence was insufficient to support a conspiracy theory.
6. The trial court failed to instruct the jury that the Commonwealth was required to present proof that petitioner failed to examine patients for whom he prescribed pain medication.
7. Failure of the trial court to instruct the jury on the "good faith" defense.
8. The petitioner's actual innocence.
9. Failure of the trial court to instruct the jury that the opiate prescribing guidelines have no force of law.
10. The trial court erred in not suppressing petitioner's statements which he alleges to have been involuntary.
11. 35 P.S. §§780-113(a)(14)(iii) is constitutionally vague.[4]

---

[2] See: Exhibit L to the answer of the Commonwealth at pp. ix-xii.
[3] See: Exhibit O to the answer of the Commonwealth. It is interesting to observe that in the Superior Court, as he does in this Court, the petitioner filed an essentially meandering petition which at best is difficult to discern and clearly in violation of the former court's rules. Specifically, the Superior Court wrote at p.3-4:
> On appeal, Mangino raises 20 convoluted issues – spanning four pages – for our consideration; however, as only the first 11 such issues are contained in the first two pages of his statement of questions, we have limited our review to those 11 issues in accordance with Rule 2116(a) of the Pennsylvania Rules of Appellate Procedure. Mangino's remaining issues are thus waived for noncompliance with Rule 2116(a)[the latter statement requires that the statement of questions presented not exceed two pages. In Nolan v. Wynder, 2010 WL 299164 (3d Cir.) the Court noted that this rule is not "regularly" followed].

[4] See: Exhibit R to the answer of the Commonwealth at pp.1-5.

Leave to appeal was denied on February 18, 2010[5] and certiorari was denied by the United States Supreme Court on October 4, 2010.[6] Post-conviction relief was never sought.

The instant petition was executed on February 15, 2011 and in it Mangino contends he is entitled to relief on the following grounds:

1. Attorneys Thomas Leslie and Arthur Shuman were constitutionally ineffective, violating petitioner's due process right to a fair impartial trial under the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.
2. The statute is constitutionally infirm and vague and for those reasons as applied to doctor Mangino violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution.
3. Jury instructions taken as a whole violated petitioner's right to due process under Fourteenth Amendment to the United States Constitution and the Fifth Amendment. His procedural default should be excused under the "fundamental miscarriage of justice" exception to the state procedural default which was only based on the "form" in which he presented those issues to avoid the conviction of one who is actually innocent.
4. Commonwealth violated rule of Brady v. Maryland under USCA 5 and 1) failed to preserve and provide "rough draft notes" taken as statements given by Mangino during an interview which were verbatim contemporaneous written at the time Mangino's statements were made: which were frankly exculpatory, and 2) allowed false misstatement testimony of several witnesses one of whom had felony conviction, without notice to courts. This ground is presented as a violation of petitioner's right to a "fair trial" under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.
5. The interviews of doctor Mangino were custodial on Aug 6 and Aug 15, 2003. All statements made during those interviews should be suppressed under the Fifth and Fourteenth Amendments to the United States Constitution – the statements were involuntary.
6. Commonwealth failed to meet its statutory burden of proof to sustain the conviction of doctor Mangino and the evidence for conviction was not sufficient to sustain any of the convictions. Thus violating his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.
7. Petitioner was denied his substantial right to a fundamentally fair and impartial trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution through the coercion of jurors by the jury foreman.[7]

---

[5] See: Exhibit T to the answer of the Commonwealth.
[6] See: Exhibit V to the answer of the Commonwealth.
[7] See: Petition at ¶12.

The factual background to this prosecution is set forth in the February 21, 2008 opinion of the trial court:

> Dr. Thomas Wilkins, a chiropractor, owned and operated a practice in New Castle, Lawrence County. Because the practice was struggling and the number of patients being seen was quite small, Dr. Wilkins brought in Dr. Philip Wagman to join the practice. Dr. Wagman was a physician and had the ability to write prescriptions for narcotic medication. By 2003 the number of patients in the practice had grown exponentially and the practice was seeing as many as 118 patients in a day. Yellow cards were given to patients to refer friends to the medical practice. If a patient referred a friend, they were entitled to a discount at their next office visit. The staff at the practice was given bonus money for booking as many appointments as they could on a given day. Patients came from as far away as Pittsburgh, Ohio, and Erie to see the doctors. Patients were required to pay a $25.00 office visit fee to Dr. Wilkins and a $40.00 office visit fee to Dr. Wagman. Dr. Wilkins and Dr. Wagman kept separate patient charts. Dr. Wilkins ordered any diagnostic testing he felt necessary and the office staff would place the diagnostic result paperwork in both Doctors' files. Based on the number of patients being seen and the fact that they had to see both Doctors, patients spent very little time with either of the practitioners. Every patient left with a prescription for narcotics written by Dr. Wagman.
>
> In March 2003 the Defendant, a board certified Anesthesiologist with a specialty in pain management joined the practice. Dr. Mangino, based on statements made to Special Agent Smith, observed that Dr. Wagman never examined any of the patients. In conversations with Dr. Wagman, Dr. Mangino learned that Dr. Wagman referred to the practice as a "script mill." Defendant explained to Agent Smith that he knew immediately that this was a chiropractic practice and these were chiropractic patients and he was concerned about why chiropractic patients were receiving narcotics. Dr. Mangino was aware that the majority of patients were walk-ins off the street and had not been referred by a primary care physician or a family doctor, which was unusual because this was a specialized pain management practice. The Defendant was also aware that of the 400 plus patients being seen each week, all of them received prescriptions for scheduled narcotics. Dr. Mangino indicated that he was aware that a large percentage of the practice did not need the amount of narcotics that they were receiving and many did not need the narcotics at all. However he continued to write the same prescriptions for the patients that they had been receiving and did not attempt to write smaller do[ses] in attempt to wean them off the medication. He explained that he didn't "have the balls' to stand up to Dr. Wagman.
>
> Dr. David Evanko, an expert on pain management for the Commonwealth, testified at trial that based on his review of the patient charts kept at the practice, the defendant's prescribing of scheduled narcotics failed to meet even the minimum standards set by the State Board of Medicine and their guidelines for

prescribing controlled substances. His review of the patient files revealed that the history and physical notes were identical for each patient; there were no referrals from primary care physicians or a family physician. There were no prior medical records from family doctors to indicate whether the back pain the patients had was chronic and how it had been treated in the past. The files that contained diagnostic testing for the most part showed the results were normal, which did not support the subjective complaints of pain. There was no plan or course of action as to how to treat the patient other than to prescribe narcotics. There was no indication that the patients were tried on non-addictive pain relievers or physical therapy. In essence Dr. Evanko's testimony indicated that the medical files were devoid of any pertinent information necessary to suggest that any of these patients were candidates for schedule II narcotics.

Based on Dr. Evanko's review he was able to offer an opinion with regard to each of the patients that the prescribing of schedule II narcotics was not in accordance with any responsible segment of the medical profession and that the prescribing was below accepted medical treatment standards.

Further, Dr. Dennis Corbett, the Commonwealth's chiropractic expert, testified that the chiropractic care received by these patients was below accepted chiropractic standards of treatment. That in order for chiropractic care to have a chance of being effective a patient needed to be seen at least three times a week for the first several weeks. However a review of the chiropractic files indicated that the patients returned to the practice when their prescription of narcotics ran out every ten to fourteen days.

These facts along with the testimony of two patients, John Lee and Rolanna Calhoun, formed the basis of the Commonwealth's prosecution in this case.[8]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411

---

[8] See: Exhibit K to the answer of the Commonwealth at pp. 3-6.

U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing

7

rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

The first issue which the petitioner seeks to raise here is that Attorneys Leslie and Shuman were constitutionally ineffective. In Pennsylvania, a claim of ineffective assistance of counsel should be raised in a post-conviction proceeding so that a thorough record can be developed. Commonwealth v. Grant, 572 Pa. 48 (2002). Since the petitioner never sought to raise this claim in a post-conviction petition, the issue has not been properly presented to the appellate courts of the Commonwealth. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has failed to pursue the available state court remedies on this issue and no further consideration of these issues is warranted here.

While it is also apparent that the petition here is in violation of Rose v. Lundy, 455 U.S. 509 (1982), because of the murkiness injected into the record by the petitioner's ramblings, and because the issues which he seeks to raise here are meritless, they are considered despite this violation. 28 U.S.C. §2254 (b)(2).

The second issue which he seeks to raise here is that the statute under which he was prosecuted, 35 P.S. 780-113(a)(14)(iii), is unconstitutionally vague.[9] This issue was raised as petitioner's seventh issue considered by the Superior Court and his eleventh issue in his petition for allowance of appeal to the Pennsylvania Supreme Court and for this reason is properly before this Court. In reviewing this claim, the Superior Court

---

[9] 35 P.S. 780-113(14)(iii) prohibits the dispensing of prescriptions for a controlled substance except in accordance with accepted medical principles. Specifically, the latter statute provides " (a) the following acts and the causing thereof within the Commonwealth are hereby prohibited…(14) The administration, dispensing, delivery, gift or prescription of any controlled substance unless done …(iii) in accordance with treatment principles accepted by a responsible segment of the medical profession."

8

concluded "having reviewed the language contained in this section and noting that it is clear, concise and unambiguous, we find no merit to Mangino's claim that this section was unconstitutionally vague."[10] As a matter exclusively of state law, this allegation is of no moment here. Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009). Additionally, Mangino alleges that there was insufficient evidence presented that he issued prescriptions without actually physically examining the patients. However, under this statute no such showing is required.

The next issue which the petitioner raises here is that the jury instructions, taken as a whole, were constitutionally improper. Specifically, he argued in the appellate courts that the court failed to instruct the jury that the Commonwealth was required to demonstrate that the petitioner failed to examine the patients prior to providing them with prescriptions; that the trial court failed to instruct the jury on the "good faith" defense and failed to instruct the jury that the opiate prescribing guidelines have no force of law. These issues were raised in the petitioner's appellate proceedings.[11]

In Estelle v. McGuire, 502 U.S. 62 (1991), the Court instructed that any challenge to the jury instructions must be evaluated in the context of the entire charge and not on isolated portions. Riley v. Taylor, 277 F.3d 261 (3d Cir.2001).

Petitioner's first claim is that the trial court failed to instruct the jury that the Commonwealth was required to demonstrate that he failed to examine the patients prior to writing prescriptions for them. In this regard, the petitioner's claim is misplaced in that the applicable section under which he was prosecuted does not contain such a requirement. Additionally, the court clearly instructed as to the elements of the crime charged.[12]

The petitioner also argues that the jury instructions were deficient in that they failed to address the "good faith" defense. While he sought to raise this issue as his fifteenth issue in his Superior Court brief, that issue was not addressed by the court, as a result of the petitioner's procedural default. As such it is not properly before this Court.

---

[10] See: Exhibit O to the answer of the Commonwealth at pp.16-17.
[11] See: Superior Court issue 15 and Supreme Court issues 6, 7 and 9.
[12] See: Exhibit J to the answer at pp.73-75.

Mangino's final argument challenging the jury instructions is that the court failed to instruct the jury that the opiate dispensing guidelines did not have the force of law.[13] At the trial, Dr. David Evanko was called to testify on behalf of the Commonwealth as an expert in prescribing controlled substances for pain control as well as addictive medicines.[14] Dr. Evanko testified generally about pain management and the guidelines which Pennsylvania had established for pain management.[15] The nature of his testimony was that the treatment rendered by the defendant to various patients was not in conformity with sound medical practice or the guidelines of the American Academy for pain medicine. Nowhere is there any testimony that the treatment was contrary to law.

Dr. Tennant who is the editor of the Practical Pain Management journal testified about professional medical guidelines for pain management but proffered no testimony regarding legal standards. Thus, as a result of the testimony of the Commonwealth's experts, there was no basis upon which to instruct the jury that the guidelines were described as having the force of law.

Mangino also contends that two violations of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) occurred during his prosecution, namely that the Commonwealth failed to disclose that its witness, John Lee had a prior conviction for theft, and that the initial interview notes taken by Agent Gregory Smith were not preserved and provided to him. In <u>Brady</u>, the Court held that upon request the prosecution must provide the defendant with evidence material to guilt or punishment.

In order to establish a <u>Brady</u> violation, a petitioner must demonstrate that "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued" <u>Strickler v. Greene</u>, 527 U.S. 263, 281-282 (1999).

At trial John Lee was called to testify on behalf of the prosecution. He testified that he was drug dependent for a non-existent condition prior to seeking medication from petitioner's practice (Answer Exhibit E. p 60); that when he returned to New Castle a

---

[13] We note that the petitioner sought to raise this issue as his seventeen issue in the Superior Court and his seventh issue in his petition for allowance of appeal.
[14] See: Exhibit F to the answer at pp.17, 23.
[15] Id. at p.29.

10

friend recommended that he seeks drugs from petitioner's practice (Ex.E.p.61); that he was able to obtain prescriptions for narcotics from petitioner's co-practitioner despite the fact that he was not in any severe pain (Ex.E.p.64); that when his treatment was transferred to petitioner, the latter performed a superficial examination and continued to provide him with prescriptions for pain medication (Ex.E.pp.70, 71, 75); that he deliberately deceived the petitioner about his pain (Ex.E.p.92) and that when he threatened to go to the police, he was discharged from the practice (Ex.E.p.78).

While the petitioner appears to be correct in asserting that the Commonwealth should have informed him of Lee's prior criminal record for purposes of impeachment under Brady, it is also readily apparent from the record that the witness freely admitted to being a drug abuser who was willing to lie for the purposes of securing prescriptions for pain medication from practitioners. Thus, because Lee's credibility was already an issue before the jury the failure to produce his criminal record could not have prejudiced the petitioner.

Additionally, Rolanna Calhoun was also called to testify as a prosecution witness. She testified that she went to the practice for a chiropractic problem and pain medication was prescribed (Exhibit F to the answer pp.7-10); that every time she went to the practice she was given a prescription for pain medication even after the pain had subsided (EX.F.pp.16,19-20); when she inquired about reducing her medication, petitioner's partner said he would maintain her at the same dosage (Ex.F.p.29); that eventually her treatment was transferred to the petitioner who continued to write prescriptions for pain medication (Ex.F.pp.30,32,52) and that she became dependent on the medication (Ex.F.p.36).

Clearly the evidence summarized above demonstrates that the petitioner and his associates where involved in indiscriminately and illegally prescribing pain medication, and the fact that the prosecution did not provide the criminal record of Lee, an admitted addict, did not prejudice the petitioner.

Mangino also argues that his Brady rights were violated in that the initial interview notes taken by Agent Gregory Smith were not preserved and provided to him. As the trial court noted "the interviews were not a product of an illegal custodial

11

interrogation, but the product of a willing mind made after the Defendant sought out the officers on his own volition" (Ex.K to the answer at p.9).

In his testimony, agent Smith testified that petitioner voluntarily made the initial contact with the police to discuss the illegal transactions which were occurring in the medical practice of which he was a part (Ex.C. pp.53,54; Ex.D. p.34); that he provided information on how the practice, which he described as a "script" mill was conducted (Ex.C. pp.57,58,62); that although he examined patients he went along with the practice of prescribing narcotic drugs which were unnecessary (Ex.C.pp.60-61,71; Ex.D. p.56) and that while rough notes of the interview were made during the course of that meeting, after the matters were transcribed to a formal report, the note were destroyed (Ex.D. 36). It is this unavailability of the rough notes about which the petitioner objects here claiming in some unsubstantiated manner that the formal report differed from the interview notes.

Where, as here, there is no showing that the destruction of rough interview notes was done in bad faith, there is no basis for relief. See: United States v. Ibrocevic, 2005 WL 705098 (C.A.3(N.J.) citing United States v. Ramos, 27 F.3d 65, 72 (3d Cir.1994).

The petitioner next contends that his police interviews were custodial in nature and for this reason any statements he made should have been suppressed. The record clearly refutes these allegations. As noted above Mangino initiated the contact with the police and voluntarily met with them on two occasions (Ex.C pp.53-56.68, Ex.D.34); that following the first interview, petitioner left and returned to work (Ex.C.p.72) and that during the first interview an attorney called the petitioner and the latter related that he did not need an attorney present (Ex.C.p.64). The finding of the trial court that "defendant was fully aware that he was not in custody and was not under any legal compulsion to speak to the agents" is entitled to a presumption of correctness. 28 U.S.C. 2254(e)(1). Indeed there is nothing to suggest that these meetings were other than voluntary and there is no evidence rebutting the presumption of correctness to the state court's factual finding. For this reason, this claim likewise does not provide a basis for relief here.

Mangino next contends that the evidence presented was insufficient to sustain his conviction. The federal standard on habeas review is whether the evidence presented was sufficient to establish guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). The petitioner was convicted of violating the Controlled Substance,

Drug, Device and Cosmetic Act, 35 Pa.Stat. §780-113(a)(14)(iii) ; the Medicaid Fraud and Abuse Control Act, Provider Prohibited Acts, 62 Pa.Stat. §1407(a)(6) and criminal conspiracy arising from his participation in the improper distribution of controlled substances regardless of the medical need therefor.

Section 780-113(a)(iii), as noted in footnote 9 prohibits the prescription of medication without reasonable medical necessity. In addition to the testimony recited above, expert medical testimony was offered which demonstrates that the prescription of narcotics without medical necessity is not a medically approved practice.[16] Thus, the evidence was more than sufficient to find guilt beyond a reasonable doubt.

The petitioner also argues that the evidence was insufficient to sustain his conviction of 62 Pa.Stat. § 1407(a)(6) which prohibits submitting

> A claim or refer a recipient to another provider by referral, order or prescription, for services, supplies or equipment which are not documented in the record in the prescribed manner and are of little or no benefit to the recipient, are below the accepted medical treatment standards, or are unneeded by the recipient.

Evidence was presented at trial by Tom Figurski of Gateway Health Plan, a Medicaid provider that "patients" who were members of the Gateway Medicaid plan were visiting petitioner's practice and receiving prescriptions for which Gateway was billed but that no doctors' treatment reimbursements were requested (Ex.D. pp. 107-109,121) and that this raised a "red flag" to the Gateway Fraud and Abuse Program (Ex.D. p.108).

Finally, criminal conspiracy in Pennsylvania, 18 Pa.C.S.A. §903(a)(1), prohibits agreeing with another to promote or facilitate the commission of a crime, and performing one or more acts in furtherance of that conspiracy. Clearly, the evidence recited above demonstrates petitioner's participation in such a conspiracy.

---

[16] Citing to the trial testimony of Dr. Evanko, the trial court noted that:
> The defendant failed to take even the minimum steps suggested by the Pennsylvania Board of Medicine such as taking a complete history and physical of a patient or reviewing objective findings such as MRI's and x-rays along with a lack of proper notation in the file as to what was done, and what was to be done for his patients. These observations, coupled with a complete review of the patients' medical files, allowed Dr. Evanko to issue an opinion that no responsible member of the medical profession would prescribe scheduled narcotics without first meeting the minimum standards set forth by the State Board of Medicine. (Ex.K p.16).

Thus, there was more than sufficient evidence presented which would enable the factfinder to find the petitioner guilty beyond a reasonable doubt and this claim likewise does not provide a basis for relief here.

Mangino's final argument is that his trial was fundamentally flawed by the juror coercion employed by the jury foreman in order to reach a verdict. The trial court concluded that there is no evidence supportive of this allegation.[17] In the present petition, there is likewise no evidence to support this allegation other than the petitioner's broad assertion that:

> during petitioner/appellants' incarceration at the Lawrence County (PA) Prison, in open prison population, one inmate publicly declared that this appellant was "NOT GULTY' based upon said inmate's impression, after having several discussions with his sister's daughter, Juror Valerie Fee. According to Mr. Charles Warren, during an excited utterance, his niece, Juror Fee, had returned home, after the trial and verdict, where she tearfully, and of her own volition, confronted members of her family with the proclamation that, "That doctor wasn't guilty" 'of anything'. Mr. Warren also claimed that Ms. Fee told him that several jurors (those with a scientific background) did not want to render a guilty verdict; but were told by the jury foreman that they had to sign the verdict form; or be held "in contempt of court" by Judge Motto.[18]

Clearly established federal law prohibits jurors from testifying about their deliberations. Tanner. V. United States, 483 U.S. 107 (1987). In addition, a determination of whether or not there was undue jury influence is a factual issue entitled to a presumption of correctness. 28 U.S.C. 2254 (e)(1). See also: Franklin v. Anderson, 434 F.3d 412, 427 (6th Cir.2006) cert. denied 549 U.S. 1156 (2007). Thus this argument like the petitioner's other arguments fails to demonstrate that his conviction was secured in any manner contrary to federal law as determined by the United States Supreme Court, he is not entitled to relief here.

Accordingly, the petition of William Mangino II for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied. Additionally, his motions for production of records (Docket No.25) and motion for leave to conduct discovery (Docket No. 26) will be dismissed as moot.

---

[17] Exhibit K. p.30.
[18] See: Document No.2-1 at p.2.

An appropriate Order will be entered.

ORDER

AND NOW, this 15th day of August, 2010 for the reasons set forth in the foregoing Memorandum the petition of William Mangino II for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied. Additionally, his motions for production of records (Docket No.25) and motion for leave to conduct discovery (Docket No. 26) are dismissed as moot.

s/ Robert C. Mitchell
United States Magistrate Judge